# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. MAAG, | ) | CASE NO. 3:06CV2629 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| KHELLEH KONTEH, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Petitioner, Thomas J. Maag ("Maag"), challenges the constitutionality of his convictions in the cases of *State v. Maag*, Hancock County Common Pleas Case Nos. 2000-CR-202 and 2001-CR-48.  Maag, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 30, 2006 with the United States District Court for the Northern District of Ohio.  On May 3, 2007, Respondent filed her Return of Writ.  (Doc. No. 7.)  Maag filed his Traverse on August 13, 2007.  (Doc. No. 13.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, the Magistrate Judge recommends Maag's petition be DENIED.

# I. Procedural History

**A.     Conviction**

In May of 2000, the Hancock County Grand Jury charged Maag with the following: one count of engaging in a pattern of corrupt activity in violation of Ohio Revised Code ("O.R.C.") § 2923.32(A)(1); two counts of cocaine trafficking in violation of O.R.C. § 2925.03; and two counts of cocaine possession in violation of O.R.C. § 2925.11(A).  (Doc. No. 7-2, Exh. 1.)

In January of 2001, the Hancock County Grand Jury returned an indictment charging Maag with the following additional offenses: one count of complicity to aggravated burglary in violation of O.R.C. § 2923.03(A)(2); one count of funding of drug trafficking in violation of O.R.C. § 2925.05(A)(3); and two counts of cocaine possession with major drug offender specifications in violation of O.R.C. § 2925.11(A).  (Doc. No. 7-4, Exh. 3.)

On December 10, 2002, the trial court consolidated the two criminal cases for trial.[1] (Doc. No. 7-12, Exh. 11.)

The state voluntarily dismissed one count of cocaine  possession and one count of engaging in a pattern of corrupt activity prior to trial.  (Doc. No. 7, Exh. 32, n. 1.)  Maag pled "not guilty" to all charges in the indictments.  On June 13, 2003, a jury found Maag guilty of the remaining seven counts.  (Doc. No. 7, Exhs. 14 & 15.)  The trial court sentenced Maag to an aggregate prison term of twenty-four (24) years.  (Doc. No. 7, Exhs. 23-25.)  The trial court denied Maag's motion for pretrial jail time credit.  (Doc. No. 7, Exh. 22.)

---

[1]    During his criminal proceedings, Maag was represented by two attorneys: J. Michael Hood, who withdrew from representation at Maag's request, and Merle R. Dech, Jr., the attorney who represented Maag at trial.

**B.      Direct Appeal**

On September 19, 2003, Maag, through trial counsel Dech, filed Notices of Appeal.

(Doc. No. 7, Exh. 26.)  On October 16, 2003, Maag, represented by new counsel Adam E.

Rakestraw, filed a motion requesting the consolidation of his appeals, which the state appellate

court granted.  (Doc. No. 7, Exhs. 27 & 28.)   On July 25, 2005, the state appellate court

sustained his second assignment of error and held that Maag should have been credited with ten

days towards his sentence for time spent in jail prior to trial.  It also sustained Maag's ninth

assignment of error and found that the state improperly failed to return Maag's automobile that

was seized at the time of his arrest.  (Doc. No. 7, Exhs. 32-35.)  The state appellate court,

however, overruled each remaining assignment of error.  *Id.*

On August 30, 2005, Maag, *pro se*, filed a Notice of Appeal with the Supreme Court of

Ohio.  (Doc. No. 7, Exh. 36.)  On December 14, 2005, the Supreme Court of Ohio dismissed

Maag's appeal as not involving any substantial constitutional question.  (Doc. No. 7, Exh. 39.)

**C.      Federal Habeas Petition**

Maag filed a Petition for Writ of Habeas Corpus and asserts the following grounds for

relief:

> Ground One: Petitioner was denied his Federal Constitutional rights and
> the corresponding Ohio Constitutional rights to be brought to trial within
> the required timeframes set forth therein.
>
> Ground Two: Petitioner's convictions are not supported by sufficient
> evidence, due to such insufficiency; Petitioner's Fifth and Fourteenth
> Amendment rights have been violated.
>
> Ground Three: Petitioner's convictions are against the manifest weight
> of the evidence, thereby denying him Due Process of Law, Fourteenth
> Amendment United States Constitution; Section 16, Article I, Ohio
> Constitution.

3

Ground Four: The Trial Court erred by permitting the introduction of
Other Acts Evidence in violation of Ohio Evid. R.'s 403 & 404.

Ground Five: The Trial Court erred in admitting excessive evidence
about the alleged drug enterprise when the probative value of the evidence was
substantially outweighed by unfair prejudice.  Fourteenth Amendment, United
States Constitution; Section 16, Article I, Ohio Constitution; Ohio Evid. R.
403(A) and (B).

Ground Six: The Trial Court erred in failing to order the disclosure of the
identity of a confidential informant used in alleged controlled purchases
allegedly involving this Petitioner.

Ground Seven: The Trial Court erred in failing to permit the Petitioner to
introduce and develop evidence of prosecutorial coercion (misconduct), of
a State witness in support of his Ohio Crim. R. 33, 'Motion for a New
Trial.'

Ground Eight: Petitioner's Trial counsel was ineffective for failing to
request a jury instruction as to the sale of counterfeit controlled substance
and for failing to acquire the criminal records of several codefendants
who were involved in the sale of the counterfeit substances.

Ground Nine: The cumulative effect of multiple errors occurring at trial
deprived Petitioner of his Constitutional rights to a fair trial, even though
each individual error may not have constituted cause for reversal.

(Doc. No. 1.)

## II.  Procedural Default

Respondent asserts that ground one and ground nine of Maag's petition are procedurally

defaulted because they were never not fairly presented to the state courts.  (Doc. No. 7-1.)  Maag

challenges this argument in his Traverse.  (Doc. No. 13 at 21-25.)

**A.**      **Standard**

Before a federal court may review a federal claim raised in a habeas petition, it must first

determine whether the petitioner has exhausted the remedies available to him in state court.  *See*

4

28 U.S.C. §2254(b)(1).  A federal habeas court is barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to procedural default or waiver.  *Wainwright v. Sykes*, 433 U.S. 72 (1977).  Failure to fairly present the federal claim to the state courts, especially if the petitioner is barred from returning to state court with it, waives the claim for purposes of federal habeas corpus review.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Fields v. Bagley*, 275 F.3d 478, 482 (6th Cir. 2001) ("If the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[, then] there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims."), *quoting Coleman v. Thompson,* 501 U.S. 722 (1991).  Where petitioner could have raised a claim in the state courts, but that claim is now barred by state rules, that claim is considered procedurally defaulted.  *See Murray v. Carrier*, 477 U.S. 478, 485 (1986).  Any claim that a petitioner defaulted in state court cannot be examined by federal habeas corpus review, unless the petitioner can demonstrate cause for the default and prejudice or actual innocence. *See Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *Murray*, 477 U.S. at 488; *Wainwright*, 433 U.S. at 87 (1977).

Under Ohio law, all claims that were known or should have been known by the defendant at the time of trial or direct appeal must be raised on direct appeal from the judgment of conviction.  *See State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175, syllabus para. 7 (1967); *State v. Combs*, 100 Ohio App.3d 90, 98 (1994).  The *Perry* Court stated:

> Under the doctrine of *res judicata*, a final judgment of conviction bars a
> convicted defendant who was represented by counsel from raising and

litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*Perry,* at syllabus para. 9.

This doctrine of *res judicata* applies to constitutional claims that could have been raised in a direct appeal, as well as to constitutional claims that could have been raised in any post conviction proceeding. *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998), *citing State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994) (holding that *res judicata* precludes post-conviction relief to address constitutional claims that could have been raised on direct appeal from the conviction and sentence).  In such a situation, a petitioner is considered to have waived the claim for federal habeas purposes "unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The Sixth Circuit has explicitly recognized *res judicata* as an adequate and independent basis for procedural default.  *Norris*, 146 F.3d at 332; *Rust*, 17 F.3d at 161.

Procedural default may be excused if the petitioner shows cause for the procedural default and prejudice from the alleged error.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  In addition to "cause," consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), a petitioner must demonstrate that he was actually prejudiced by the alleged constitutional error.  *See also Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

6

consider the claims will result in a fundamental miscarriage of justice.")

**B.      Ground One: Violation of Speedy Trial Rights**

In his petition, Maag argues that his right to a speedy trial was violated under both the

Federal and Ohio Constitutions.  (Doc. No.1.)  Respondent contends that Maag never "fairly

presented" such a claim to the Ohio courts.  (Doc. No. 7-1 at 12.)  Federal habeas claims that

have not been fairly presented to the state courts or have been presented improperly to the state

court generally are not cognizable on federal habeas review.  Invoking principles of comity and

federalism, federal courts have long required state prisoners to exhaust the "available state

remedies" before addressing the merits of a federal claim on federal habeas review.  *Coleman v.*

*Thompson,* 501 U.S. 722, 731 (1991).  To determine whether a claim has been "fairly presented,"

a court examines whether the petitioner: "(1) reli[ed] upon federal cases employing

constitutional analysis; (2) reli[ed] upon state cases employing federal constitutional analysis; (3)

phras[ed] the claim in terms of constitutional law or in terms sufficiently particular to allege a

denial of a specific constitutional right; or (4) alleg[ed] facts well within the mainstream of

constitutional law."  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), *citing Franklin v.*

*Rose*, 811 F.2d 322, 326 (6th Cir.1987).  In *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), the

Supreme Court explained:

> A litigant wishing to raise a federal issue can easily indicate the federal law
> basis for is claim in a state-court petition or brief, for example, by citing in
> conjunction with the claim the federal source of law on which he relies or a
> case deciding such a claim on federal grounds, or by simply labeling the
> claim "federal."

However, "general allegations of the denial of rights to a 'fair trial' and 'due process' do not

'fairly present' claims that specific constitutional rights were violated."  *McMeans*, 228 F.3d at

7

681.

In the instant action, Maag did not fairly present a federal speedy trial claim to the state courts.  On direct appeal, Maag's speedy trial claim was based solely on state law, specifically on an alleged violation of O.R.C. § 2945.71 *et seq.*  (Doc. No. 7-30, Exh. 29.)   In support of his argument, Maag relied exclusively on Ohio statutes and Ohio case law and makes no mention of an alleged violation of his federal constitutional right to a speedy trial.  *Id.*  Because Maag framed his argument squarely in terms of state law and relied solely on state case law analyzing the state's speedy trial statute, the state appellate court did not have a fair opportunity to review ground one.  Furthermore, the state appellate court's decision is also rooted firmly in state law and did not treat Maag's assignment of error as raising a federally based speedy trial claim. (Doc. No. 7-38, Exh. 32.)  Accordingly, any speedy trial claim based upon federal law is unexhausted.

Rather than dismiss unexhausted claims, a federal court entertaining a habeas petition may address them if it determines that a return to state court would be futile.  *See Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir.2001).  In circumstances where the petitioner has failed to present a claim in state court, this Court may find that claim procedurally defaulted if the Ohio state courts would no longer entertain the claim.  *Buell v. Mitchell*, 274 F.3d 347, 349 (2001).  Because Maag would be precluded from raising a federal speedy trial claim in state court due to the doctrine of *res judicata*, Maag's claim in ground one is procedurally defaulted.[2]

---

[2]  Although Maag also raises a state-law based speedy trial rights claim in his petition, such a claim is not cognizable for this Court's review, as a federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on the basis of a

8

**C.     Ground Nine: Cumulative Errors**

In ground nine of his petition, Maag argues that "[t[he cumulative effect of multiple errors occuring [sic] at trial deprived Petitioner of his Constitutional right to a fair trial, even though each individual error may not have constituted cause for reversal." (Doc. No. 1.)  Maag included this argument in his brief before the state appellate court.  (Doc. No. 7-31, Exh. 29.) Again, Maag made no reference to federal law to support his claim and relied exclusively on state law.[3]  *Id.*  Moreover, Maag omitted this claim from his appeal to the Supreme Court of Ohio.  (Doc. No. 7-43, Exh. 37.)  Respondent avers that Maag has waived this argument by failing to present it before the Supreme Court of Ohio.  (Doc. No. 7-1.)  The exhaustion requirement is not satisfied until the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *See, e.g.,  Duncan v. Henry*, 513 U.S. 364, 115 S.Ct. 887, 888 (1995); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  Because Maag failed to raise his claim before the Supreme Court of Ohio and would now be precluded from raising his cumulative error claim before that court due to the doctrine of *res judicata*, Maag's claim in ground nine also is procedurally defaulted.

**D.     Ground Two: Sufficiency of the Evidence**

Without specifying the particular conviction, Maag argues that his convictions are not supported by sufficient evidence.  (Doc. No. 1.)  On direct appeal, Maag *only* challenged two of his convictions on sufficiency of the evidence grounds – Count Five of Case No. 2000-CR-202

---

perceived error of state law" unless the error is so egregious as to amount to a denial of fundamental fairness or of other federal rights.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[3]  Maag cites only one case in support of his argument: *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (Ohio 1995).

and Count Two of Case No. 2001-CR-48, both of which involve possession of cocaine.  (Doc. No. 7-30, Exh. 29.)  Maag's sufficiency claim regarding these two convictions are addressed on their merits in Part III, Section A, *infra*.  However, because Maag never challenged any of his other convictions on sufficiency grounds, claims that his remaining convictions are not supported by sufficient evidence are procedurally defaulted.

Maag has not presented any "cause" for his procedural default that would allow this Court to consider his claims in grounds one, two and nine.  Accordingly, these claims should be dismissed.

### III.  Review on the Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Maag filed his habeas petition after the effective date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of United States Supreme Court, as opposed to dicta.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Nevertheless, an explicit

10

statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).  As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11. For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10, 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) ("[AEDPA] tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.")  The "unreasonable" requirement is a high bar. *See Ruimveld*, 404 F.3d at 1010.

11

A.      **Grounds Two and Three: Sufficiency of the Evidence and Manifest Weight of the Evidence**

In ground two of his petition, Maag argues that his convictions were not supported by sufficient evidence and, therefore, his conviction is in violation of his Fifth and Fourteenth Amendment rights.  (Doc. No. 1.)  In ground three of his petition, Maag argues that his convictions are against the manifest weight of the evidence.  *Id.*  Under Ohio law, a conviction against the manifest weight of the evidence and a conviction by insufficient evidence are subject to two different legal standards.  *See, e.g., Ohio v. Banks*, 605 N.E.2d 219, 224-25 (Ohio Ct. App. 1992).  On direct appeal, Maag argued that his convictions were both against the manifest weight of the evidence *and* that they were not supported by sufficient evidence.  (Doc. Nos. 7-30, Exh. 29; 7-43, Exh. 37.)  However, this Court can only review Maag's sufficiency of the evidence claim because manifest weight claims are non-cognizable on federal habeas review.  *See, e.g.*, *Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin,* 2006 WL 2090093 at *6 (S.D. Ohio 2006); *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123 (1986).

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See*

12

*id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).

Federal courts are required to give deference to factual determinations made in state court.  *See Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)  Further, in reviewing the sufficiency of a conviction, "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70.

Maag argues that his convictions are not supported by sufficient evidence.  (Doc. No. 1.)  As discussed in Part II, Section D, *supra*, only two of Maag's sufficiency of the evidence claims are exhausted – Count Five of Case No. 2000-CR-202 and Count Two of Case No. 2001-CR-48, both of which involve possession of cocaine.[4]  (Doc. No. 7-30, Exh. 29.)

Maag argues that there was insufficient evidence to uphold his two convictions for possession of cocaine because there was no direct testimony that identified the substance as cocaine.  However, the testimony of Brian Shetzer ("Shetzer") and Chad Valentine ("Valentine") constitute sufficient evidence to support his convictions for possession of cocaine.[5]  Shetzer

---

[4] Count Five in Case No. 2000-CR-202 charged Maag with possessing cocaine on or about November 1, 1999 in an amount in excess of 1,000 grams while traveling from Adrian, Michigan to Findlay, Ohio.  (Doc. No. 7-2, Exh. 1); Count Two in Case No. 2001-CR-48 charged Maag with possessing cocaine on or about November 3, 1999 in an amount in excess of 1,000 grams in Findlay, Ohio.  (Doc. No. 7-4, Exh. 3.)  Because some charges were dropped and the two cases were consolidated for trial, Count Five in Case No. 2000-CR-202 became "Count Three" and Count Two in Case No. 2001-CR-48 became "Count Five."  (Tr. 1200, 1207.)  Maag's appellate brief and the state appellate court's decision both refer to the counts as they were numbered in the indictments; this Court shall do the same.

[5] Prior to testifying, both Shetzer and Valentine pled guilty to several charges for their roles in the Gonzalez Family Drug Enterprise.  (Tr. 595-600, 875.)

13

provided trial testimony relevant to both counts of possession and testified to the following.  He traveled to Adrian, Michigan on three occasions to either "obtain drugs" or to deliver money. (Tr. 616.)  On one such trip, he was joined by Maag, Roger Gonzalez ("Gonzalez"), and Mike Harpe ("Harpe") and the four traveled to a house in Adrian, Michigan by automobile.  (Tr. 622-23.)  Shetzer waited in the car while the others went inside the house.  *Id.*  Some time later, the others exited the house with a black duffel bag, which was placed in the trunk of their car.  (Tr. 624.)  The four of them drove to Toledo.  *Id.*  During the drive, either Maag or one of his co-conspirators told Shetzer that the black duffel bag contained four kilograms of cocaine.  (Tr. 625.)  In Toledo, the group delivered three of the four kilograms of cocaine to Terry Chapman – "some guy Roger Gonzalez knew."  (Tr. 625-26.)  After the stop in Toledo, Shetzer dropped off Maag and Gonzalez; he and Harpe proceeded to the home of Ryan Black ("Black") to deposit the remaining kilogram of cocaine in a safe.  (Tr. 626-27.)  Shetzer witnessed Black deposit the remaining one kilogram of cocaine into the safe.  *Id.*

On November 3, 1999, shortly or immediately after the trip to Adrian, Michigan, Maag told Valentine there were drugs kept in a safe at Black's home.[6]  (Tr. 894.)  Maag suggested that they steal the safe containing one kilogram of cocaine from Black's house.  (Tr. 872-83, 921.)  Valentine agreed and accompanied Maag and Maag's brother Willie to Black's residence.  (Tr. 922-23.)  Valentine and Maag's brother entered Black's residence and retrieved the safe while Maag waited in the car.  (Tr. 923-27.)  According to Valentine, the three returned to Willie

---

[6]  Valentine stated that he too had traveled to Adrian, Michigan with Gonzalez to "drop off money or pick up some cocaine."  (Tr. 892.)  Valentine helped Gonzalez "break [the cocaine] ... cut it and weigh it."  (Tr. 893.)  He also stated that he was involved in drug transactions with Maag, including a ten ounce purchase of cocaine in Florida made on Maag's behalf with Maag's money.  (Tr. 917-18.)

14

Maag's house and opened the safe, which contained one kilogram of untouched cocaine and an additional twenty-four (24) ounces that were "already cut and made up." (Tr. 933.) Maag removed the cocaine and Valentine helped him break down and sell the cocaine. (Tr. 934-35, 986-88.)

Maag argues that neither Valentine nor Shetzer saw, smelled, tasted, ingested, or otherwise tested any of the alleged cocaine that served as the basis for his possession convictions. (Doc. No. 7-30, Exh. 29.) This argument is unavailing. There is no requirement that a substance be tasted, ingested or otherwise tested before a witness can identifying a substance as a drug. In fact, the Sixth Circuit has observed that:

> The identity of a drug may be ascertained by circumstantial evidence . . . . Such circumstantial evidence may include evidence of the physical appearance of the substance involved in the transaction . . . , testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

*United States v. Simpson*, 226 Fed. Appx. 556, 564 (6th Cir. 2007), *quoting United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994). The Supreme Court of Ohio also has recognized that "a drug may be identified by circumstantial evidence," but emphasized that foundation is important and that a lay person should have sufficient familiarity with a substance to support the identification of a controlled substance. *State v. McKee*, 744 N.E.2d 737, 91 Ohio St.3d 292, 295 (Ohio 2001), *citing State v. Maupin*, 330 N.E.2d 708, 42 Ohio St.2d 473 (Ohio 1975).

With respect to Count Two, both Shetzer and Valentine clearly identified the substance contained in the safe as cocaine. Shetzer testified that he had ingested cocaine hundreds of times and used cocaine on a daily basis between 1999 and 2000. (Tr. 663, 703.) He stated that he

15

could identify cocaine by tasting it, but he did not specifically testify that he ever sampled the cocaine obtained from Adrian, Michigan.  (Tr. 663.)  Valentine also testified that he had tested most but not all of the drugs he sold with Maag.  (Tr. 991.)  Valentine did not testify whether he ever tested the cocaine obtained from the stolen safe.  Valentine, particularly, had ample opportunity to observe the cocaine when it was removed from the safe as well as the following day when he helped Maag process the cocaine for sale.  Valentine's testimony reveals extensive experience with handling drugs and sets adequate foundation for a lay opinion sufficient to identify a substance as cocaine.  In addition, Valentine was unequivocal when he stated that the amount of cocaine he observed was well in excess of 1000 grams.  In fact, Valentine testified that it was Maag who told him about the location of the cocaine in Black's safe.  Thus, in addition to Valentine's visual identification, other corroborating circumstances elicited from witness testimony are that (1) Valentine sold the substance as cocaine on Maag's behalf; (2) the procurement of the substance was carried out with secrecy and involved an armed robbery of a residence; and (3) the substance was called cocaine by Maag and others in his presence.  As such, a jury could reasonably find that there was evidence to support each element of Count Two.

With respect to Count Five, the evidence also is sufficient to support a conviction.  Although Shetzer never testified that he actually saw the four kilograms of cocaine that allegedly were procured from Adrian, Michigan, he did state that he saw one of the four kilograms being placed in the safe at Black's residence.  Because over a kilogram of cocaine was stolen a short time after it was deposited in Black's safe, the jury could reasonably infer that the substance Valentine identified as cocaine from the stolen safe was the same substance Shetzer saw placed

16

in the safe.  Finally, Shetzer testified that during their trip from Adrian, Michigan to Toledo, Ohio, the others referred to the substance in the black duffel bag as four kilograms of cocaine.[7] Also, while Shetzer did not testify that he personally saw the three kilograms of cocaine delivered to a person in Toledo, the jury could reasonably infer that those three kilograms also were cocaine on the basis of the testimony that the fourth kilogram of the substance, derived from the same batch as the other three kilograms, was later identified as cocaine by both Shetzer and Valentine.

Maag's argument that there is no evidence of "possession" under Count Five also lacks merit.  As the court explained to the jury during the instructions, two or more persons may have "possession" of an item at the same time and ownership is not necessary as a person may possess property of another.  (Tr. 1201.)  Maag's argument that most of the alleged cocaine was delivered to someone in Toledo is irrelevant to the issue of whether Maag possessed cocaine. Based on the totality of the evidence, the jury could reasonably have found that the cocaine was jointly possessed by all of the car's passengers.

Because the record contained sufficient evidence that would allow a reasonable jury to find that every element of the crime of possession of cocaine was satisfied, on both counts, Maag's assignment of error is without merit.

**B.  Grounds Four Through Seven: Alleged Evidentiary Errors**

In grounds four through seven of his petition, Maag raises several arguments based on

---

[7] Although Maag's counsel objected to this statement on hearsay grounds, under Rule 801(d)(2) of both the Ohio Rules of Evidence and Federal Rules of Evidence, the statement of a co-conspirator made during the course of the conspiracy is *not* hearsay because it constitutes an admission by party.  The trial court overruled Maag's objection. (Tr. 625.)

alleged errors in the trial court's evidentiary rulings.  (Doc. No. 1.)  Specifically, Maag argues

the trial court erred by: (1) allowing witnesses to testify concerning other alleged criminal acts

by Maag in violation of Ohio Evid. R. 403 and 404; (2) allowing the admission of excessive

evidence concerning the Gonzalez Family Drug Enterprise,[8] the probative value of which was

outweighed by unfair prejudice; (3) failing to require the prosecution to disclose the identity of a

confidential informant; and (4) failing to allow Maag to introduce evidence of prosecutorial

coercion to support a motion for a new trial pursuant to Ohio Crim. R. 33.  *Id.*

It is well-established that alleged trial court errors in the application of state procedure or

evidentiary law, particularly regarding the admissibility of evidence, are generally not

cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Instead,

questions concerning the admissibility of evidence, as well as its probative or prejudicial value,

are properly left to the sound discretion of the trial court.  *See Oliphant v. Koehler*, 594 F.2d 547,

555 (6th Cir. 1979); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) ("[A]n inquiry as to

---

[8]  The state appellate court, in part, summarized the facts underlying the drug enterprise
as follows:

> This case stems from allegations that defendant-appellant, Thomas Maag,
> (hereinafter, referred to as "Maag"), had been associated with and acted in
> furtherance of an entity which became known to law enforcement officials
> as the "Gonzalez Family Drug Enterprise."  From various investigations
> and
> surveillance evidence, it was believed that the members and associates of
> the Gonzalez Family Drug Enterprise were carrying out large-scale
> drug-trafficking activities throughout several states including Florida,
> Illinois, Michigan and Ohio.

(Doc. No. 7, Exh 32.)

whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (citations omitted). Only where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

In his brief before the state appellate court, Maag argues that the trial court erred by allowing witnesses to testify concerning other allegedly criminal acts by Maag in violation of Ohio Evid. R. 403 and 404 and that the evidence presented concerning the Gonzalez Family Drug Enterprise was excessive and unfairly prejudicial.  The state appellate court found that the testimony presented by Agent Apple concerning the Gonzalez Family Drug Enterprise served the purpose of providing an immediate background to the facts supporting Maag's criminal offenses and further tended to show that Maag had the opportunity, intent, and knowledge to engage in various drug-related activities.  (Doc. No. 7-38, Exh. 32.)  It also found that, under Ohio law, testimony tending to support the presence of a criminal conspiracy is admissible even if the defendant is not charged with the crime of conspiracy in order to introduce the statements of co-conspirators.  *Id.*  The trial court instructed the jury that certain testimony relating to the Gonzalez Family Drug Enterprise was for foundational purposes only and not to be construed as substantive evidence.  (Tr. 611-12.)  The admission of Agent Apple's testimony or other evidence of a conspiracy, even if erroneous, did not render Maag's trial so fundamentally unfair as to constitute a denial of federal rights.

Maag also argues that the trial court erred by failing to order the prosecution to disclose

19

the identity of a confidential informant ("CI").  Prior to trial, the Court addressed Maag's motion asking the trial court to order the prosecution to disclose the CI's identity.  Based on the prosecution's declaration that it would not call the CI as a witness, the trial court denied Maag's motion.  (Doc. No. 7-55, Exh. 41 at 46-47.)  The prosecution, in fact, did not call the CI to the stand, but, nevertheless, Agent Apple's testimony revealed the name of the CI involved in the controlled buys of cocaine from Maag.  A review of Agent Apple's testimony reveals that his testimony was based upon his observations and not upon statements he received from the CI. (Tr. 394-520.)  Maag has made no argument that the CI could have offered exculpatory testimony.  Moreover, trial testimony revealed that Maag and the CI knew one another; and, therefore, the prosecution's failure to disclose the CI's identity prior to trial did not prevent Maag from calling the CI as a witness if the CI did indeed have exculpatory information to present.  Under these circumstances, the Confrontation clause is not implicated as the CI did not testify as a witness against Maag.  Further, the trial court's failure to order the disclosure of the CI's identity did not render Maag's trial so fundamentally unfair as to constitute a denial of federal rights.

Finally, Maag argues that the trial court erred by failing to allow Maag to introduce and develop evidence of prosecutorial coercion that would support a motion for a new trial pursuant to Ohio Crim R. 33.  A trial court's procedural decision concerning a *post-trial* motion has no impact on the issue of whether the trial was so fundamentally unfair as to constitute a violation of Maag's federal rights.  Post-trial procedural decisions cannot, as a practical matter, turn an otherwise fair trial into a constitutionally deficient trial.  The substantive basis for Maag's claim also lacks merit.  Maag argues that a letter written to him by Shetzer demonstrates that the

20

prosecution coerced witnesses.  A review of Shetzer's letter indicates that Shetzer, and possibly

Shetzer's attorney, did not believe Shetzer would have to testify in Maag's case.  (Doc. No. 12,

Exh. E1.)  In his letter, Shetzer indicates that the prosecutor "threatened" that if Shetzer did not

cooperate he would take Shetzer before the judge for resentencing.  *Id.*  During trial, Shetzer

testified that, as part of his plea negotiations, he agreed to testify against all co-defendants in the

Gonzalez Family Drug Enterprise in exchange for the prosecution agreeing to request a sentence

of no more than twenty years.  (Tr. 597-98.)  Despite Maag's efforts to infer some impropriety

into the prosecutor's actions, the only reasonable inference to be drawn from Shetzer's letter is

that the prosecutor indicated he would seek a hearing before the sentencing court if Shetzer did

not comply with his portion of the plea agreement.  This is not a constitutional error.

For the foregoing reasons, Maag's arguments that the trial court erred with respect to

several evidentiary and procedural rulings are without merit because Maag was not deprived of a

fundamentally fair trial.

**C.     Grounds Eight: Ineffective Assistance of Trial Counsel**

In ground eight of his petition, Maag alleges that he was denied his right to effective

assistance of trial counsel because trial counsel: (1) failed to request a jury instruction as to the

sale of counterfeit controlled substances and (2) failed to acquire the criminal records of several

co-defendants who were involved in the sale of the counterfeit substances.  (Doc. No. 1.)

In order to establish ineffective assistance of counsel, a petitioner must show that

counsel's conduct fell so far below acceptable standards of representation that counsel was not

functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution,

and that such deficient performance so prejudiced the defense as to render the proceeding unfair.

*See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Deficiencies in counsel's performance must "be prejudicial to the defense in order to constitute ineffective assistance."  *Id.* at 692.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  That is to say, it must be demonstrated that counsel's performance "caused the defendant to lose what he otherwise would probably have won" and that it was "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Disagreements by a defendant with tactics and/or strategies will not support a claim of ineffective assistance of counsel; and, a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy.  *Strickland,* 466 U.S. at 689;  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Vague or conclusory allegations are insufficient to establish the prisoner's burden that counsel's performance was deficient and that the defendant suffered prejudice as a result.  *See United States v. Cronic*, 466 U.S. 648, 666 (1984) (ineffective assistance of counsel claims can only be made out by pointing to specific errors made by counsel).

The state appellate court found that Maag's argument that trial counsel was ineffective for failing to request a jury instruction as to the sale of counterfeit controlled substances lacked merit.  The state appellate court reasoned that because Maag was not charged with possessing or trafficking counterfeit controlled substances, "it is not clear why, or for what purpose, such an

instruction would have aided Maag's defense." (Doc. No. 7-38, Exh. 32.)  The state appellate court further noted that it is the trial court's responsibility to provide the jury with all necessary and relevant jury instructions.  *Id.*  Maag has failed to demonstrate that state appellate court's decision violated any clearly established federal law.  Further, because Maag was not charged with sale or possession of counterfeit drugs, it is not clear how his counsel's failure to request such an instruction prejudiced his defense.

The state appellate court also rejected Maag's argument that trial counsel was ineffective for failing to acquire the criminal records Michael Harpe, James Hernandez, and Tony Hernandez lacked merit, because trial counsel requested and received the criminal records of the those individuals on December 6, 2000 and March 25, 2002.  (Doc. No. 7, Exhs. 25 & 32.) Factual determinations by state courts are entitled to a presumption of correctness.  *See, e.g., House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  Because Maag's allegation that his counsel failed to obtain this information is incorrect, his assignment of error is without merit.  Moreover, even if Maag's allegation was accurate, Maag has failed to demonstrate how he would have been prejudiced by his trial counsel's alleged failure to obtain the criminal records of three people who did not testify at his trial.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Maag's Petition be DENIED.

/s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: January 25, 2008

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).